**GENERAL ACQUISITION, INC., et al., Plaintiffs,**

**v.**

**GenCORP, INC., Defendant–Appellant,**

**Shearson Lehman Brothers, Inc., Defendant–Appellee,**

**Wagner & Brown, et al., Defendants.**

No. 92–4043.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1993.

Decided May 6, 1994.

Melvin D. Weinstein, Shelby M. Steger, Thomas W. Hill (argued and briefed), O. Judson Scheaf, III, Emens, Hurd, Kegler & Ritter, Columbus, OH, for GenCorp, Inc.

James E. Pohlman (argued and briefed), Daniel W. Costello, Rex H. Elliott, Porter, Wright, Morris & Arthur, Columbus, OH, Elizabeth S. Stong, Willkie, Farr & Gallagher, New York City, for Shearson Lehman Bros., Inc.

Before: KEITH and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

This case involves General Acquisition, Inc.'s attempted hostile takeover of Appellant GenCorp, Inc., in March, 1987. Having successfully resisted General Acquisition's overture, GenCorp's directors now seek to hold Appellee Shearson Lehman Brothers, Inc., liable for allegedly disclosing confidential information in conjunction with the takeover bid.[1] Although GenCorp has not yet established any wrongdoing on Shearson's part, we are asked at this early stage in the proceedings to review a district court order affecting the amount of damages GenCorp might possibly recover if liability can ultimately be proved. That both parties seek to confer appellate jurisdiction upon this court at this time does not relieve us of our independent obligation to scrutinize the basis for appellate jurisdiction. *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204–05, 47 L.Ed.2d 435 (1976). Because we conclude that we do not possess appellate jurisdiction to review the question on appeal, we cannot address the merits of this dispute. Therefore, we DISMISS the appeal and REMAND for further disposition.

## I. Background

Formerly known as the General Tire & Rubber Company, GenCorp is a highly diversified corporate enterprise which participates in the aerospace, defense, plastics, tire, beverage, broadcasting and entertainment industries.[2] On March 18, 1987, General Acquisition announced a tender offer for all of GenCorp's outstanding shares at a price of $100 per share. Federal regulations which govern such tender offers required GenCorp's directors to respond to this announcement by evaluating the terms of the offer and advising their shareholders accordingly. 17 C.F.R. § 240.14e–2(a) (1993).[3] After conducting a thorough analysis, GenCorp's directors concluded that the tender price of $100 per share was inadequate when compared to GenCorp's "break up" value, which they estimated between $122 and $137 per share. To dissuade their shareholders from accepting an offer they considered inadequate, the directors implemented a partial stock repurchase at a price of $130 per share. This leveraged self-tender prevented General Acquisition from completing the takeover.

GenCorp seeks to recover from Shearson part of the cost of fending off General Acquisition's hostile bid. In its pleadings, GenCorp makes elaborate factual allegations, almost all of which Shearson vigorously denies, and virtually none of which have been finally resolved by the district court. At this point, with so many genuine issues of material fact in dispute, a brief summary of GenCorp's theory of liability will suffice to establish the background for this appeal.

**1.** Nominally the plaintiff in this case, General Acquisition is no longer a party to this suit. General Acquisition initiated this action in an effort to dismantle GenCorp's anti-takeover defenses, but General Acquisition and GenCorp have settled their dispute. Only GenCorp's counterclaim against Shearson remains before the court today.

**2.** For a discussion of GenCorp's structure and the proposed takeover, *see generally* Robert J. Cole, *$2.2 Billion Offer Made for GenCorp*, N.Y. Times, March 19, 1987, at D1.

**3.** 17 C.F.R. § 240.14e–2(a) provides:

As a means reasonably designed to prevent fraudulent, deceptive or manipulative acts or practices . . ., the [target] company, no later that 10 business days from the date the tender offer is first published or sent or given, shall publish, send or give to security holders a statement disclosing that the [target] company:

(1) Recommends acceptance or rejection of the bidder's tender offer;

(2) Expresses no opinion and is remaining neutral toward the bidder's tender offer; or

(3) Is unable to take a position with respect to the bidder's tender offer.

Such statement shall also include the reason(s) for the position (including the inability to take a position) disclosed therein.

At one time, Shearson may have owed fiduciary duties to GenCorp.[4] In this fiduciary capacity, Shearson purportedly acquired confidential information regarding GenCorp's future business prospects. According to GenCorp, this confidential information was disclosed by Shearson in recommending that General Acquisition seek control of GenCorp. Characterizing this alleged fiduciary breach as the genesis of the takeover bid, GenCorp seeks to hold Shearson responsible for injuries it claims to have suffered as a result of the raid. Specifically, GenCorp seeks to recover part of the cost of implementing the defensive self-tender which ostensibly protected the shareholders from the inadequate tender offer. Although frequently characterized by the parties and by the district court as a claim for "compensatory damages," this claim can more precisely be described as a cause of action for breach of fiduciary duty. In the alternative, GenCorp suggests that a theory of either fraud or negligence entitles it to recover the cost of its self-defense.

To defeat General Acquisition's tender offer, GenCorp's directors hastily implemented a $1.4 billion self-tender. Less than three weeks transpired between the announcement of the hostile tender offer on March 18, 1987, and the announcement of the self-tender on April 5, 1987. GenCorp claims that the need to act swiftly forced it to spend $58.5 million more to execute the self-tender than an identical maneuver would have cost given the luxury of more time. GenCorp claims this $58.5 million expenditure as damages, representing the cost of averting the serious threat posed to the shareholders by Shearson's wrongdoing. The speed-induced costs which GenCorp seeks to recover from Shearson include: (1) $17.8 million in investment banking fees; (2) $16.2 million in financing fees to secure a $1.75 billion loan commitment over the course of a weekend; (3) $13.4 million in severance payments to employees terminated as a result of the emergency restructuring; (4) $4.1 million in legal fees; (5) $1.9 million in prepayment penalties to retire existing loans which obstructed the extension of new credit; and (6) $5.1 million in miscellaneous costs. In the event that GenCorp proves a breach of fiduciary duty, it also seeks disgorgement of $10 million in fees Shearson earned at least in part from the revelation of confidential information about GenCorp.

In response to Shearson's pretrial motion, the district court refused to grant summary judgment on the question of liability, but did grant partial summary judgment to Shearson on the question of damages. *General Acquisition, Inc. v. GenCorp, Inc.,* No. C–2–87–0348 (S.D.Ohio April 8, 1992) (Opinion and Order) ("April Order"). In the view of the district court, GenCorp suffered no compensable injuries as a result of the takeover attempt—despite spending $58.5 million in self-defense—because the alleged wrongdoing benefited the shareholders through a substantial stock price increase.[5] This ruling, which embraced a defense theory of essentially *damnum absque injuria,* reduced by $58.5 million the maximum amount GenCorp can recover from Shearson even if liability is ultimately established. The district court did not dismiss the portion of GenCorp's suit seeking disgorgement of the $10 million in fees Shearson earned advising General Acquisition during the takeover attempt.

The ruling on damages—with no ruling on liability—was obviously not a "final" order conferring appellate jurisdiction on this court, so the trial court sought to certify the April Order for discretionary review pursu-

---

4. In *General Acquisition, Inc. v. GenCorp, Inc.,* 766 F.Supp. 1460, 1468–74 (S.D.Ohio 1990), Shearson moved for summary judgment on the grounds that it never entered into a fiduciary relationship with GenCorp. The district court refused to grant summary judgment, explaining that GenCorp had alleged sufficient facts in its pleadings to permit a conclusion that a fiduciary relationship once existed.

5. GenCorp stock traded at $74 per share on January 2, 1987. On March 17, 1987, the day before the hostile tender offer, the stock price was $90 per share. On May 7, 1987, the day the self-tender was completed, the stock price was $118. The district court calculated that "[t]he overall increase in stock value was 59.4% in just seventeen weeks, resulting in an increase in value of all shares of more than $1 billion." April Order at 16.

ant to 28 U.S.C. § 1292(b).[6] A unanimous panel of this court denied the parties' joint motion for interlocutory review. *GenCorp, Inc. v. Shearson Lehman Bros., Inc.,* Nos. 92–8320/8321 (6th Cir. May 21, 1992). The panel explained "that an immediate appeal is not likely to materially advance the ultimate termination of this litigation. This is not, therefore, an exceptional case warranting interlocutory review." *Id.* at 2.

Undeterred by this clear signal from our court, the district court and the parties persevered in their quest for interlocutory review of the April Order. In response to GenCorp's motion for reconsideration, and Shearson's renewed motion for summary judgment, the district court repeated its position that liability remained in dispute but that certain damages would not be recoverable. *General Acquisition, Inc. v. GenCorp, Inc.,* No. C–2–87–0348 (S.D.Ohio Oct. 2, 1992) (Opinion and Order) ("October Order"). The district court then certified the October Order for interlocutory review as a partial final order under Fed.R.Civ.P. 54(b),[7] notwithstanding our earlier refusal to review a virtually identical ruling. We believe that this certification, which forms the sole basis for appellate jurisdiction at this time, was erroneous because the requirements for proper Rule 54(b) certification are not satisfied in this case.

## II. Appellate Jurisdiction Under Rule 54(b)

■ Rule 54(b) of the Federal Rules of Civil Procedure permits immediate review of certain district court orders prior to the ultimate disposition of a case. *See, e.g., Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 3, 100 S.Ct. 1460, 1462, 64 L.Ed.2d 1 (1980); *Liberty Mutual, supra,* 424 U.S. at 742–43, 96 S.Ct. at 1205–06; *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 899–900, 100 L.Ed. 1297 (1956). Although Rule 54(b) relaxes the traditional finality requirement for appellate review, it does not tolerate immediate appeal of every action taken by a district court. The rule is specifically "designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action." *Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 60 (6th Cir.1986).

■ Rule 54(b) certification requires two independent findings. First, the district court must expressly "direct the entry of final judgment as to one or more but fewer than all the claims or parties" in a case. Second, the district court must "express[ly] determin[e] that there is no just reason" to delay appellate review. Fed.R.Civ.P. 54(b), *supra* note 7; WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2655 (1983 & Supp.1993) (hereinafter "Wright, Miller & Kane"). A district court certifying an order under Rule 54(b) must clearly explain why it has concluded that immediate review of the challenged ruling is desirable. *Solomon,* 782 F.2d at 61–62.

■ The first step in certification, entry of partial final judgment, is satisfied where some decision made by the district court ultimately disposes of one or more but fewer

6. 28 U.S.C. § 1292(b) provides in pertinent part:
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such an action may thereupon, in its discretion, permit an appeal to be taken from such order....

7. Rule 54(b) provides:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

than all of the claims or parties in a multi-claim/multi-party action. As the Supreme Court explained in *Curtiss–Wright:*

> A district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

446 U.S. at 7, 100 S.Ct. at 1464 (citing *Sears,* 351 U.S. at 436, 76 S.Ct. at 900); Wright, Miller & Kane § 2656.

■ The second step in certification, determination of no just reason for delay, requires the district court to balance the needs of the parties against the interests of efficient case management. "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465. Courts implementing Rule 54(b) must "strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." Wright, Miller & Kane § 2654. By limiting interlocutory appeals under Rule 54(b) to "infrequent harsh case[s]," *Rudd Construction Equip. Co., Inc. v. Home Insurance Co.,* 711 F.2d 54, 56 (6th Cir.1983), courts can alleviate hardship resulting from unnecessary delay without undermining "the historic federal policy against piecemeal appeals." *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465 (citing *Sears,* 351 U.S. at 438, 76 S.Ct. at 901).

■ The two findings required for 54(b) certification—the entry of partial final judgment and the determination of no just reason for delay—are reviewed by courts of appeals under a dual standard. The determination that a particular order ultimately disposes of a separable claim is a question of law reviewed *de novo,* while the finding of no just reason for delay is only reviewed for an abuse of discretion. In *Curtiss–Wright,* the Supreme Court carefully explained "the proper function of a reviewing court in Rule 54(b) cases":

> The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." *Sears,* [351 U.S.] at 437[, 76 S.Ct. at 900–01]. The reviewing court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable.

446 U.S. at 10, 100 S.Ct. at 1466. *See also* Wright, Miller & Kane § 2655; 2A FEDERAL PROCEDURE: LAWYERS EDITION § 3:348 (1994) (hereinafter "Federal Procedure") ("The determination of the District Court as to just cause for delay is . . . subject to reversal only for an abuse of discretion. The Court of Appeals is not bound by the trial court's determination that it had the power to grant certification and may determine for itself whether the action involves multiple claims. . . ."); JAMES W. MOORE ET AL., 6 MOORE'S FEDERAL PRACTICE ¶ 54.41[3] (2d ed. 1993) (hereinafter "Moore").

Applying this standard of review, we conclude that the question certified for immediate appeal does not represent the final disposition of a single claim properly dislodged from a multiple claim action. We further conclude that, even if a separable claim were presented on appeal, the district court abused its discretion in finding no just reason to delay appellate review. Accordingly, we lack appellate jurisdiction over this matter.

### III. Rule 54(b)'s Multiple Claims Prerequisite

■ Litigants in a single claim, two party dispute may not resort to Rule 54(b) as a basis for appellate jurisdiction. *See Liberty Mutual, supra,* 424 U.S. at 742–43, 96 S.Ct. at 1205–06. By its own terms, Rule 54(b) applies only to actions involving either multi-

**1028**

ple parties or multiple claims. In a case such as this, involving only two parties, Rule 54(b) certification necessarily depends upon the presence of multiple claims.

In *Liberty Mutual*, the Supreme Court found it unnecessary to delineate precisely "what constitutes a claim for relief" under Rule 54(b). 424 U.S. at 744 n. 4, 96 S.Ct. at 1206 n. 4. The lack of any "generally accepted test" often makes the task of ascertaining whether a particular action presents one or more claims a formidable one. Wright, Miller & Kane § 2657; 2A Federal Procedure § 3:342 ("The question of what constitutes a single claim for relief is unsettled and the courts are reluctant to articulate a hard-and-fast test."); 6 Moore ¶ 54.33[2] ("With the doctrine thus in ferment it is difficult to state any reliable litmus for identifying a distinct 'claim for relief.'").

Although not acknowledged by either party, the interpretation of Rule 54(b)'s multiple claims prerequisite is not a question of first impression in this circuit. We dismissed the appeal in *McIntyre v. First National Bank of Cincinnati*, 585 F.2d 190, 191 (6th Cir. 1978), after determining that the absence of multiple claims left the district court without "authority to enter final judgment" under Rule 54(b). The plaintiff in *McIntyre* had alleged state and federal causes of action arising out of the same events. Pursuant to the district judge's instructions, the federal causes of action were tried in their entirety prior to any disposition of the state causes of action. At the conclusion of the first phase of the suit, the district court entered judgment for the defendant on the federal causes of action. The district court then certified this order for immediate appeal under Rule 54(b), even though the state causes of action remained unresolved. In dismissing the appeal, we concluded that the state and federal causes of action should be considered a single "claim" under Rule 54(b), because they shared a common factual background. We explained that "[e]ven though different theories of liability may have been asserted, the concept of a 'claim' under Rule 54(b) denotes 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Id.* at 192 (citing *Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339, 341 (2d Cir.), *cert. denied*, 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963)); *Gottesman v. General Motors Corp.*, 401 F.2d 510, 512 (2d Cir.1968) (applying "operative facts" test to determine whether multiple claims were present); *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 697 (9th Cir.1961) (same). *See also* 2A Federal Procedure § 3:342 ("As used in FRCP 54(b), a 'claim' ... is the aggregate of operative facts which give rise to the claimant's legal rights.").

Under the *McIntyre* test, Rule 54(b) certification was improper in this case because all of GenCorp's allegations concern a single "aggregate of operative facts," and therefore constitute a single claim for purposes of appellate jurisdiction. GenCorp accuses Shearson of a single wrong—prompting General Acquisition to target GenCorp, and all of GenCorp's rights against Shearson arise from the series of events preceding the attempted hostile takeover. The fact that Gen-Corp seeks to recover two types of damages—compensation and disgorgement—does not convert a single claim into multiple claims. "[W]hen a plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and [Rule 54(b)] does not apply." Wright, Miller & Kane § 2657. *See Liberty Mutual*, 424 U.S. at 744 n. 4, 96 S.Ct. at 1206 n. 4 ("recogniz[ing] that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief"). A district court's rejection of one of several requests for relief arising from a single wrong does not establish appellate jurisdiction under Rule 54(b). *See, e.g., Arizona State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir.1991) (no appeal permitted from dismissal of punitive damages claim where compensatory damages claim remained in district court); *Monument Management Ltd. Partnership I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir.1992) (no appeal permitted from dismissal of consequential damages claim where inverse condemnation claim remained in district court).

Rather than applying our circuit's *McIntyre* test, the parties urge this court to adopt

a "recoveries" test for counting the number of claims in an action. Under the recoveries test, originally formulated in *Rieser v. Baltimore & Ohio R.R. Co.*, 224 F.2d 198 (2d Cir.1955), multiple claims have been stated when a claimant's "possible recoveries are more than one in number and not mutually exclusive." Wright, Miller & Kane § 2657. Conversely, only one claim has been stated when "a claimant presents a number of legal theories, but will be permitted to recover only on one of them." *Id.* In other words, only one claim exists, despite multiple theories of recovery, when the "bases for recovery are mutually exclusive, or simply presented in the alternative." *Id.* GenCorp suggests that multiple claims are present in this case under the recoveries test because it seeks to recover two distinct types of damages from Shearson. Taking a slightly different tack, Shearson suggests that multiple claims are present in this case under the recoveries test because GenCorp included three different liability theories in its pleadings—breach of fiduciary duty, fraud, and negligence.

We are satisfied that this case involves only a single claim under both the *McIntyre* test and the recoveries test. As we have already explained, only one claim exists under the *McIntyre* test because all of the causes of action arise out of a single aggregate of operative facts. This case also involves a single claim under the recoveries test because: (1) GenCorp's request for two types of relief does not constitute more than a single claim under any "multiple claims" test, and (2) GenCorp's three theories of liability are in fact mutually exclusive.

According to GenCorp, the claim for compensatory damages should be considered separate from the claim for disgorgement because recovery under one theory would not preclude recovery under the other. But the Supreme Court's holding in *Liberty Mutual* refutes any notion that requests for various forms of relief arising from a single breach of fiduciary duty generates multiple claims for purposes of Rule 54(b). 424 U.S. at 744 n. 4, 96 S.Ct. at 1206 n. 4; 6 Moore ¶ 54.33[2] (interpreting *Liberty Mutual* as "stat[ing] categorically that an action seeking recovery

for a single injury and based upon a single theory of liability does not present more than one claim for relief because the plaintiff demands several types of relief"); Wright, Miller & Kane § 2657; 2A Federal Procedure § 3:342.

■ Shearson would find multiple claims in this case because GenCorp's three liability theories pursue what Shearson characterizes as "non-exclusive" recoveries. We might find this argument more persuasive if GenCorp's theories of liability were in fact non-exclusive. But the standard of exclusivity gauges the extent to which a plaintiff might be entitled to more than one recovery. As one commentator explains, where "a favorable judgment on [one] count would bar a favorable judgment on [another] count," those counts seek " 'mutually exclusive' recoveries, and hence do not constitute multiple claims." Note, *Federal Rule 54(b): The Multiple Claims Requirement*, 43 VA.L.REV. 229, 236 (1957). Because all three of GenCorp's liability theories seek to redress a common injury—the cost of defending against the hostile takeover—it is simply not true that GenCorp could recover more than once. To the extent that GenCorp prevails on any one of these theories, it could not return to court under another theory in pursuit of a double or triple recovery. *See Eckman v. Columbia Oldsmobile, Inc.*, 65 Ohio App.3d 719, 585 N.E.2d 451, 452–53 (1989) (prohibiting duplicative recovery for an injury which had been "cured" by an earlier award of relief). From this perspective, GenCorp has not stated multiple claims—it has offered alternative theories in pursuit of one recovery. GenCorp is clearly not entitled to the kind of multiple recoveries which constitute multiple claims under the recoveries test. The absence of multiple claims or parties in this case renders the district court powerless to certify the April Order for immediate appeal under Rule 54(b).

## IV. The Reason to Delay Appellate Review

■ Assuming *arguendo* that the question on appeal satisfied the multiple claims prerequisite, appellate jurisdiction at this

stage is nevertheless defective because the district court abused its discretion in finding no just reason to delay appellate review. Given the significant possibility that the novel and complex questions of state law presented on appeal will be rendered moot by subsequent developments in the district court, we conclude that the ruling on damages is not amenable to interlocutory review.

[11] We recognize that district courts are vested with considerable discretion to "release" certain orders for immediate appeal under Rule 54(b). *Sears,* 351 U.S. at 437, 76 S.Ct. at 900–01; *Curtiss–Wright,* 446 U.S. at 10, 100 S.Ct. at 1466. However, this court has also recognized that "the district court's discretion is not unbounded." *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.,* 807 F.2d 1279, 1282 (6th Cir.1986) (reversing district court's determination of no just reason for delay); *Day v. NLO, Inc.,* 3 F.3d 153, 154–55 (6th Cir.1993) (same); *Solomon,* 782 F.2d at 61–62 (same); *Rudd Construction,* 711 F.2d at 56 (same). A finding of no just reason for delay is subject to reversal if the district court fails adequately to explain its reasoning, or if the district court fails to "weigh and examine the competing factors involved in the certificat[ion] decision." *Solomon,* 782 F.2d at 61–62.

■ Although "[n]o precise test exists for determining whether there is a just reason to delay," Wright, Miller & Kane § 2659, this court has articulated the following "nonexhaustive list of factors which a district court should consider when making a Rule 54(b) determination":

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Corrosioneering,* 807 F.2d at 1283 (citation omitted); *Solomon,* 782 F.2d at 61 n. 2; *Day,* 3 F.3d at 155.

The district court offered three reasons why it "strongly believe[d] that review at this time best serves the needs of the parties." October Order at 10 n. 6. First, the district court opined that "there is almost no possibility that the need for judicial review will be mooted by future developments in" the district court. *Id.* Second, the district court reasoned that "there is little possibility that the Sixth Circuit will be obliged to consider the same issue a second time." *Id.* Finally, the district court expressed concern about "the great risk that a second lengthy trial will be required should the Sixth Circuit decide that [the district court]'s conclusion regarding compensatory damages is in error." *Id.*

[13] While we acknowledge that Courts of Appeals may not "reweigh the equities or reassess the facts" when reviewing Rule 54(b) certifications, we have been instructed by the Supreme Court "to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Curtiss–Wright,* 446 U.S. at 10, 100 S.Ct. at 1466. Within this framework, we can not accept as either juridically sound or supported by the record the district court's conclusions that (1) "there is almost no possibility" of the question on appeal being rendered moot, or (2) that a "second lengthy trial" will inevitably result "should the Sixth Circuit decide" at some later date that the district court's "conclusion regarding compensatory damages is in error."

The question certified for appeal concerns the amount of damages Shearson will owe if liability can be established. But as of yet no wrongdoing has been proved, and we gather from Shearson's motions for summary judgment that no concession of liability is forthcoming. The district court's repeated refusal to grant summary judgment suggests that reasonable minds may disagree over the dispositive question of liability. GenCorp concedes that a jury verdict on liability in Shearson's favor would render the question of damages entirely moot.

The potential for a challenged ruling to be mooted by subsequent developments in the district court weighs against certification for interlocutory appeal. Wright, Miller & Kane § 2659; 2A Federal Procedure § 3:347. Appellate review of a question of damages prior to any determination of liability puts the proverbial cart before the horse, and such certifications are clearly reversible under the law of this circuit. In *Corrosioneering,* we explained that the appeal of an indemnity question was premature because liability had not been established:

> [A] successful appeal by [the defendant] challenging the district court's finding against it on the liability issue would render unnecessary this appeal on the indemnification question. The possibility of this occurring persuades us that the indemnity issue should await adjudication of the entire case so that in a unified appeal the appellate tribunal could address the liability issue first and proceed to the indemnity question only if necessary. In the absence of countervailing considerations supporting an immediate appeal, this juridical concern is alone sufficient to warrant our finding that the district court abused its discretion in rendering the Rule 54(b) certification.

807 F.2d at 1284; *Rudd Construction,* 711 F.2d at 56 (abuse of discretion to certify question of damages for appeal without "establish[ing] either the fact or the amount of [the defendant]'s liability"). *See also* Wright, Miller & Kane § 2659 n. 22 (collecting cases dismissing 54(b) appeals on grounds of potential mootness); 2A Federal Procedure § 3:347 n. 67 (same).

The potential for mootness takes on even greater weight in the 54(b) balance when the question we may never have to address presents sophisticated and unprecedented questions of state law. "[I]n keeping with notions of judicial restraint, federal courts should not reach out to resolve complex and controversial questions" unnecessarily. *Allen v. Ferguson,* 791 F.2d 611, 615 (7th Cir.1986). The virtue of judicial restraint, which we find compelling enough in the face of complex

*federal* questions, militates even more persuasively against expansive appellate jurisdiction in cases where federal jurisdiction is justified only by diversity of citizenship. As we explained recently in *Day v. NLO, supra,* in reversing a 54(b) certification:

> The Ohio law in this area . . . is unsettled. The causes of action are as yet undefined by precedent or by rulings of the district court in this case. The nature and definition of the multiple causes of action alleged have not been elaborated on. . . . We are therefore loath to [address the state law question] at this point in the proceedings. We are not satisfied that we can make a correct decision at this time.

3 F.3d at 155. *Cf. Employment Division v. Smith,* 494 U.S. 872, 909 n. 2, 110 S.Ct. 1595, 1616–17 n. 2, 108 L.Ed.2d 876 (1990) (Blackmun, J., dissenting) (noting that the Supreme Court "often prides itself about principles of judicial restraint and reduction of federal control over matters of state law").

GenCorp resolves the mootness dilemma by characterizing "the probabilities of a defense verdict on liability"—which would moot this appeal—as "remote." But our potential mootness analysis can not rely upon one party's self-serving assessment of the strength of its case. If the district court is truly convinced that Shearson acted improperly, as GenCorp insists, one would anticipate a grant of summary judgment finding Shearson liable. But GenCorp has neither requested nor received such a ruling, which raises some doubt as to the completeness of its proofs at this early stage in the proceeding. Accordingly, we conclude that the potential for the challenged ruling to be rendered moot is far from remote, and constitutes just cause to delay appellate review in this case.

We do not share the district court's concern that an expensive second trial will inevitably result if we ultimately reverse the ruling on damages. Federal Rule of Civil Procedure 42(b) [8] expressly permits the bifurca-

---

8. Fed.R.Civ.P. 42(b) provides in pertinent part: The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party

tion of trials in the interest of "expedition and economy." In this case, a preliminary trial on liability would allow the parties and the district court to make a binding determination of liability before expending resources on the question of damages.

All doctrine aside, we doubt that any authority must be cited to identify the district court's abuse of discretion in this case. The district court's finding of no just reason to delay appellate review practically defies logic in the wake of our previous conclusion that *"[t]his is not ... an exceptional case warranting interlocutory review." GenCorp v. Shearson, supra,* at 2 (emphasis added). The persistence of the parties and the district court in seeking immediate review of the ruling on damages in the face of this clear statement mocks our appellate jurisprudence. While the standards permitting interlocutory review under 54(b) and 1292(b) may not be precisely identical, the same factors certainly seem relevant to both types of inquiry. *See Campbell v. Westmoreland Farm, Inc.,* 403 F.2d 939, 942–43 (2d Cir. 1968) (Rule 54(b) certification considered improper for the same reasons that appeal under § 1292(b) was improper); Wright, Miller & Kane § 2658.2. Perhaps some unique set of facts might justify Rule 54(b) certification after the denial of a 1292(b) petition, but this is not that case.

Almost two years ago, we informed the parties and the district court that the ruling on damages was not amenable to interlocutory review in the absence of any finding of liability. We adhere to that disposition once again, and we therefore DISMISS this appeal and REMAND to the district court for further proceedings.

claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.