NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0242n.06

**Case No. 20-1479**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| S2 YACHTS, INC., | ) | **FILED**<br>May 14, 2021<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| ERH MARINE CORP., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

BEFORE:    COLE, CLAY, and GRIFFIN, Circuit Judges

COLE, Circuit Judge.  S2 Yachts, Inc., a Michigan manufacturer of marine vessels, chose not to renew its agreements with one of its retailers based in the Dominican Republic, ERH Marine Corp.  ERH Marine disputed the action, arguing that under Dominican Republic law, S2 Yachts was required to demonstrate "just cause" for the non-renewal.  S2 Yachts subsequently brought this suit in federal court in Michigan and ERH Marine began proceedings in the Dominican Republic.  After determining that Michigan was the proper forum and ruling in favor of S2 Yachts on many of the claims, the district court elected to certify the resolved claims as a partial final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.  On appeal, we conclude that Michigan is the proper forum and Michigan law applies to this dispute.  And as the parties agree, S2 Yachts prevails under Michigan law.  We affirm.

I.

S2 Yachts, Inc. is a marine-vessel manufacturer incorporated and headquartered in Michigan. It sells different types of boats under various trade names, including Tiara Yachts (yachting and cruising) and Pursuit Boats (offshore fishing boats). ERH Marine Corp. is a marine dealer and maintenance provider that does business in the Dominican Republic and is incorporated in Panama. S2 Yachts and ERH Marine began their business relationship when ERH Marine became a Pursuit Boats dealer in 2000. ERH Marine then also became a Tiara Yachts dealer in 2002. Over time, the parties signed additional dealer agreements for both Pursuit Boats and Tiara Yachts.

S2 Yachts eventually decided it wanted to terminate this business relationship. It therefore notified ERH Marine in January 2018 that it did not plan to renew the Tiara Yachts and Pursuit Boats agreements once they expired in July of that year. ERH Marine disputed the termination. S2 Yachts accordingly brought this action on April 9, 2018, in the United States District Court for the Western District of Michigan. It sought a declaratory judgment that it complied with all its obligations under the Tiara Yachts (Count I) and Pursuit Boats (Count II) agreements.

About a month later, ERH Marine initiated conciliation proceedings in the Dominican Republic on this same issue. After conciliation failed, ERH Marine filed a formal suit in the Dominican Republic and moved to dismiss the Michigan action pursuant to Federal Rule of Civil Procedure 12(b)(6). It argued that the federal court should not exercise its jurisdiction in this matter and should instead allow the action to proceed only in the Dominican Republic pursuant to forum non conveniens, *Colorado River* abstention, or the *Brillhart* doctrine. The district court denied the motion, instead electing to exercise its jurisdiction.

Following the district court's decision, ERH Marine finalized its counterclaims. It first sought a declaratory judgment that it complied with all its obligations under the Tiara Yachts (Count I) and Pursuit Boats (Count II) agreements. It also brought a claim seeking damages for breach of contract under Dominican Republic Law 173 (Count III) or, in the alternative, alleging non-termination-related breaches under Michigan law (Count IV). And finally, it sought relief under Michigan law for business defamation, also in the alternative (Count V). The parties then cross-moved for summary judgment on all claims.

The district court granted S2 Yachts' motion for summary judgment in part and denied ERH Marine's motion entirely. It first determined that Dominican Republic Law 173, which would require S2 Yachts to demonstrate "just cause" for the termination, does not apply to this dispute. It then concluded that Michigan law controls and that under Michigan law S2 Yachts' termination did not breach either agreement. It accordingly granted summary judgment in favor of S2 Yachts on Counts I and II of the Amended Complaint and Counts I and II of the Amended Counterclaim and dismissed Count III of the Amended Counterclaim. Applying Michigan law, the district court also dismissed part of Count IV of the Amended Counterclaim with prejudice and determined that the remaining contract matters from the Amended Counterclaim would proceed to a bench trial. About one month later, the trial court in the Dominican Republic dismissed that action for lack of territorial jurisdiction. According to the parties, that decision is pending appeal.

Aspects of Count IV and the entirety of Count V of the Amended Counterclaim remain unresolved in the district court. But the bench trial was cancelled due to COVID-19. The district court therefore certified Counts I and II of the Amended Complaint and Counts I, II, and III of the Amended Counterclaim as a partial final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. ERH Marine then filed a timely notice of appeal on May 22, 2020. It appealed

the certification under Rule 54(b), the grant of relief on the merits to S2 Yachts, and the determination that Michigan is the proper forum for the dispute.

II.

A.  JURISDICTION

We have jurisdiction over this appeal only if the district court properly certified the relevant claims under Rule 54(b).  *See, e.g.*, *Corrosioneering, Inc. v. Thyssen Env't Sys., Inc*, 807 F.2d 1279, 1282 (6th Cir. 1986).  "Rule 54(b) of the Federal Rules of Civil Procedure permits immediate review of certain district court orders prior to the ultimate disposition of a case."  *General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994).  This rule enables a final judgment to be entered "on one or more claims, as to one or more parties, in a multi-claim/multi-party action."  *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986).  But Rule 54(b) certification should not be granted routinely.  Instead, it should be invoked only in "infrequent harsh case[s]."  *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 5 (1980).

To certify certain claims for review under Rule 54(b), the district court "must expressly" (1) "direct the entry of final judgment as to one or more but fewer than all the claims or parties" and (2) "determine[e] that there is no just reason to delay appellate review."  *General Acquisition*, 23 F.3d at 1026 (internal quotation marks and citation omitted).  "The determination that a particular order ultimately disposes of a separable claim is a question of law reviewed *de novo*, while the finding of no just reason for delay is only reviewed for an abuse of discretion."  *Id.* at 1027.

First, this action presents multiple claims within the meaning of Rule 54(b).  The certified claims "are not automatically 'distinct' from the remaining claims 'simply because they were separately pleaded.'"  *Novia Commc'ns, LLC v. Weatherby*, 798 F. App'x 890, 893 (6th Cir. 2020)

(quoting *EJS Properties, LLC v. City of Toledo*, 689 F.3d 535, 538 (6th Cir. 2012)). Instead, to determine whether multiple claims exist, we have "traditionally applied the 'operative facts' test." *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 500 (6th Cir. 2012). Under the operative facts test, when causes of action share "a single 'aggregate of operative facts'" they are "considered a single 'claim' under Rule 54(b)." *General Acquisition*, 23 F.3d at 1028. For example, "when a plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and [Rule 54(b)] does not apply." *Id.* (quoting 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2657 (2d ed. 1987)).

This is not simply a case of "different theories of damages for the same underlying injury." *Daleure v. Kentucky*, 269 F.3d 540, 543 (6th Cir. 2001). The core issue underlying each of the certified claims in this case is whether Michigan law or Dominican Republic law governs the dispute and if S2 Yachts' termination accordingly complied with its duties under the contracts. The remaining claims concern unrelated allegations of contract breaches by S2 Yachts, including failing to complete orders, build vessels to the proper specification, and return unused deposits, as well as allowing other dealers to distribute products within ERH Marine's area of primary responsibility and making defamatory statements to other dealers and potential ERH Marine customers.

The certified and remaining claims therefore allege "different acts or omissions" and seek "to recover damages that stem from separate injuries." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 274 (6th Cir. 2019); *see also GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 442 (6th Cir. 2004). The primary factual overlap between the certified and remaining claims is the existence and validity of both the Pursuit Boats and Tiara Yachts agreements. This alone does not constitute an "aggregate" of operative facts. *See Planned Parenthood*, 696 F.3d at 501.

This action therefore presents sufficiently distinct underlying material facts and injuries to constitute multiple claims.

Second, the district court did not err in holding that there is no just reason to delay this appeal. In reviewing for abuse of discretion, "the discretionary judgment of the district court should be given substantial deference, for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" *Curtiss-Wright*, 446 U.S. at 10 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956)). We consider five non-exhaustive factors to guide this inquiry:

(1) the relationship between the adjudicated and unadjudicated claims;
(2) the possibility that the need for review might or might not be mooted by future developments in the district court;
(3) the possibility that the reviewing court might be obliged to consider the same issue a second time;
(4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;
(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Corrosioneering*, 807 F.2d at 1283 (citation omitted).

The district court properly concluded that each of these factors weighs in favor of certification. The parties agree that there is no possibility that the proceedings in the district court will be mooted, this court will likely not have to decide this issue a second time in a later appeal, there is no risk of financial set-off, and judicial efficiency favors immediate review. Instead, ERH Marine argues that the certified and remaining claims are interrelated under the first factor because the choice of law issue could decide the entire dispute. But the disputed aspects of the remaining claims are distinct from those before us in this appeal. Therefore, any connection the choice-of-law clause creates between the certified and remaining claims is not itself reason to delay this appeal, and the district court did not abuse its discretion.

Because the district court properly certified these claims under Rule 54(b), the prior interlocutory orders involving the certified claims merge with the partial final judgment. *See Dimond Rigging Co., LLC v. BDP Int'l Inc.*, 914 F.3d 435, 449 (6th Cir. 2019). We therefore have jurisdiction over the forum dispute as well as the decision on the merits.

B. CHOICE OF LAW

Before we begin, we must determine what law applies to this controversy. Both the Pursuit Boats and Tiara Yachts agreements contain choice-of-law clauses selecting Michigan law. But ERH Marine contends that Dominican Republic Law 173 applies instead.

As an initial matter, even if we apply the law of the Dominican Republic, Law 173 is displaced by the Dominican Republic-Central America-United States Free Trade Agreement ("DR-CAFTA"). DR-CAFTA provides that "[t]he Dominican Republic shall not apply Law No. 173 to any covered contract signed after the day of entry into force of this Agreement unless the contract explicitly provides for the application of Law No. 173." Dominican Republic-Central America-United States Free Trade Agreement, Annex 11.13 § B(1), Aug. 5, 2004. The parties agree that the relevant "date of entry into force" of DR-CAFTA is when the Dominican Republic formally ratified it on March 1, 2007, and that the most recent extensions of both dealer agreements were signed after 2007. These post-2007 agreements, moreover, explicitly "supersede[] all other agreements of any nature and contain[] the entire agreement between the parties with respect to [their] subject matter." Because these were the active contracts between the parties and thus serve as the basis for this action, DR-CAFTA applies to them. Therefore, even if we look to the law of the Dominican Republic, we apply the principles provided by DR-CAFTA, not Law 173.

With that clarity, we turn to the conflict of laws analysis. When we sit in diversity, we apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

487, 496 (1941).  The forum state is Michigan, which applies the Restatement (Second) of Conflicts of Laws § 187.  *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703–04 (Mich. 1995).  Under § 187(2), a choice-of-law clause will apply unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental public policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

1 Restatement (Second) of Conflict of Laws § 187(2) (1971); *see also Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993).  We treat the law of a foreign country the same as we would treat the law of another U.S. state in conducting this analysis.  *See, e.g.*, *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 738–39 (6th Cir. 1999).  Because ERH Marine has waived any argument that Michigan does not have a substantial relationship to the parties and the transaction, we analyze only the fundamental public policy factor.

"In order for the chosen state's law to violate the fundamental policy of [the other locale], it must be shown that there are significant differences between the application of the law of the two states." *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1123 (6th Cir. 1987) (citation omitted).  But DR-CAFTA shares the same relevant legal framework as Michigan: Both apply freedom of contract principles and therefore allow non-renewal of agreements consistent with their terms.  *See Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 787–88 (Mich. 2003); DR-CAFTA, *supra*, at Annex 11.13 § B(1)(b).  We accordingly enforce the choice-of-law clause and apply Michigan law to this dispute.

C. PROPER FORUM

ERH Marine moved for dismissal at the outset of the case, arguing that the federal court should not exercise its jurisdiction over this matter under the forum non conveniens, *Colorado River* abstention, or *Brillhart* doctrines. The district court disagreed and elected to exercise its jurisdiction over this matter. We review each argument against exercising jurisdiction in turn.

i.    *Forum non conveniens*

We review a forum non conveniens holding for abuse of discretion. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). This doctrine "allows a federal court to decline jurisdiction when it serves the interests of the parties, the court, and justice to try the matter in another forum." *Taglieri v. Monasky*, 767 F. App'x 597, 600 (6th Cir. 2019) (citing *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018)). Because S2 Yachts brought this action in Michigan pursuant to a valid forum-selection clause, we apply a modified framework. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

"[F]orum-selection clauses should control except in unusual cases." *Id.* at 64. The forum-selection clause "deserves deference" and, by agreeing to it, ERH Marine has "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 63–64. To prevail under this modified framework, ERH Marine must establish an adequate alternative forum and we must determine that Michigan would be an unnecessarily burdensome forum based only on public interest factors. *See id.*

We need not decide whether the Dominican Republic provides an adequate alternative forum because the public interest factors weigh in favor of exercising jurisdiction. "[W]here the

[district] court has considered all relevant . . . factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft*, 454 U.S. at 257. The public interest factors include:

> [T]he administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), *superseded on other grounds by* 28 U.S.C. § 1404(a), *as recognized in American Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994)). No administrative difficulties are in play and Michigan indisputably has an interest in this litigation because S2 Yachts is a resident of the state and its law applies here. ERH Marine's only remaining argument is that this controversy is localized to the Dominican Republic because that is where the marine vessels were sold. This alone does not offset the rest of the factors. Because the public interest factors weigh in favor of exercising jurisdiction, the district court did not abuse its discretion in refusing to dismiss the suit based on forum non conveniens.

   *ii.* Colorado River *abstention*

   We review decisions not to abstain from exercising jurisdiction "*de novo* because of the complex interaction of federal jurisdictional and comity concerns." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l., Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). But in certain "extraordinary and narrow exception[s]," courts may use their discretion to abstain from exercising their jurisdiction. *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). One such abstention doctrine was articulated by the Supreme Court in *Colorado River*. This doctrine is

relevant where "contemporaneous exercise of jurisdiction" exists and "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" favor abstaining. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (quoting *Colorado River*, 424 U.S. at 817) (internal quotation and alteration omitted).

To begin, *Colorado River* concerned state and federal contemporaneous proceedings, not federal and foreign proceedings. Indeed, whether *Colorado River* abstention applies to foreign proceedings is still an open question in our circuit. *See Answers in Genesis*, 556 F.3d at 467. But even if *Colorado River* applies here, the district court did not err in electing to exercise its jurisdiction. Analyzing whether abstention is appropriate is a two-step process. First, the actions must be parallel. *Romine*, 160 F.3d at 339. The parties do not contest this. So we focus instead on the second inquiry, where we look to the following factors to determine whether they weigh in favor of abstaining:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained[;] (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206–07 (6th Cir. 2001) (citing *Romine*, 160 F.3d at 340–41). This analysis "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

Most factors indisputably weigh in favor of exercising jurisdiction. There is no res or property involved in the case. The parties bargained for Michigan to be the forum, minimizing any potential argument that Michigan is inconvenient to ERH Marine. *See AAR Int'l, Inc. v.*

*Nimelias Enters. S.A.*, 250 F.3d 510, 522–23 (7th Cir. 2001). The Michigan proceedings were brought first and were further along, as the suit in the Dominican Republic was not filed until one month before the district court decided this motion to dismiss. And Michigan law applies, making the federal court better situated to hear this dispute.

The remaining factors do not tip the balance. ERH Marine relies almost entirely on its argument that the Michigan proceeding will inconvenience the ongoing Dominican Republic proceeding and cause unwanted piecemeal litigation, encapsulated by the third and eighth factors. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. Duplication is indeed possible here, but this alone does not require us to abstain from exercising jurisdiction. And, if necessary, the courts can decide res judicata questions. The district court accordingly did not err in electing not to abstain from exercising its jurisdiction pursuant to *Colorado River*.

### iii. Brillhart *doctrine*

We review decisions to exercise jurisdiction under the Declaratory Judgment Act for abuse of discretion. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995). The Declaratory Judgment Act provides courts with discretion over whether to exercise the jurisdiction it confers: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). But it does not elaborate on how we should use that discretion, particularly when there are ongoing parallel proceedings. The Supreme Court sought to fill this gap in *Brillhart v. Excess Insurance Co. of America*, noting that "[o]rdinarily it would be

uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. 491, 495 (1942).

Like *Colorado River* abstention, it is an open question in our circuit whether the *Brillhart* doctrine applies to foreign proceedings. But once more, even if it applies, the district court did not abuse its discretion in electing to exercise jurisdiction here. We have identified five factors to guide this analysis:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks and citation omitted). We "frame our own review within the considerations of efficiency, fairness, and federalism, and review all of the relevant facts, both those that fit squarely within the *Grand Trunk* factors and those that do not." *Western World Ins. Co v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014).

ERH Marine has waived any argument that this action would not settle the controversy under the first factor or that it would not serve a useful purpose under the second. Under the third, there is no reason to believe that S2 Yachts is "playing procedural games." *Id.* at 761. And we will not "impute an improper motive to a plaintiff where there is no evidence of such in the record." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008). In analyzing the fourth factor, we look to the following sub-factors:

> a. whether the underlying factual issues are important to an informed resolution of the case;
>
> b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Western World*, 773 F.3d at 759 (quoting *Flowers*, 513 F.3d at 560). This factor also weighs in favor of exercising jurisdiction. The courts in the Dominican Republic are in a similar position to us in evaluating the factual issues, and legal questions, not factual ones, control much of this dispute. This case, moreover, "does not raise novel or difficult questions" of Dominican Republic law, *id.* at 761, as Michigan law controls. And under the fifth factor, there is no indication that the federal court is "a clearly inferior forum to resolve the issue." *Flowers*, 513 F.3d at 562.

Since all five *Grand Trunk* factors weigh in favor of exercising jurisdiction under the Declaratory Judgment Act, we hold that the district court did not abuse its discretion in doing so.

D. MERITS

We review a grant of summary judgment *de novo*. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 235 (6th Cir. 1992). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Counts I and II of the Amended Complaint and Counts I and II of the Amended Counterclaim seek a declaratory judgment regarding whether S2 Yachts complied with its obligations under both agreements. In Michigan, to establish breach of contract, ERH Marine must show that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr. Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

The parties do not dispute that the agreements were valid contracts. And as ERH Marine concedes, Michigan law does not require cause to support non-renewal of a contract after its termination date. Instead, "[i]n Michigan, contracts are enforced according to their terms, and this rule is a 'corollary of the parties' liberty to contract.'" *Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F. Supp. 2d 829, 867 (W.D. Mich. 2008) (quoting *Coates v. Bastian Brothers, Inc.*, 741 N.W.2d 539, 543 (Mich. App. 2007)). The Pursuit Boats agreement provides that after it elapses, "[t]he parties *may* continue their relationship, upon their mutual agreement, by signing a new agreement." The Tiara Yachts agreement similarly clarifies that the parties may elect to renew it, but explicitly does not "create a promise, representation or agreement of a continuing relationship beyond the expiration date." And S2 Yachts fulfilled the requirement that it provide ERH Marine with at least 90 days' notice of non-renewal. It follows, then, that S2 Yachts complied with its obligations under both agreements by their terms and was entitled to summary judgment.

We also affirm the dismissal of Count III of the Amended Counterclaim. This counterclaim seeks damages pursuant to Dominican Republic Law 173, which does not apply to this dispute.

III.

We affirm the district court's holdings both that Michigan is the proper forum for this dispute and that S2 Yachts prevails on the certified claims.