ELLIOTT COMPANY, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant/Third Party Plaintiff,

v.

United Technologies Corporation, et al., Third Party Defendants.

No. 1:05 CV 1387.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 8, 2006.

Michael H. Ginsberg, Laura A. Meaden, Jones Day, Pittsburgh, PA, Erin L. Dickinson, Paula Gallito Shakelton, Jones Day, Cleveland, OH, for Plaintiff.

Brad A. Rimmel, Susan Squire Box, Roetzel & Andress, Akron, OH, John C. Sullivan, Post & Schell, Philadelphia, PA, for Defendant/Third Party Plaintiff.

William H. Falin, Moscarino & Treu, Cleveland, OH, Carolyn M. Branthoover, Julie S. Greenberg, Kirkpatrick & Lockhart Nicholson Graham, Pittsburgh, PA, for Third Party Defendants.

***Memorandum of Opinion and Order***

GAUGHAN, District Judge.

### *INTRODUCTION*

Currently before the Court is Plaintiff Elliott Company's Motion for Rule 59 Reconsideration and in the Alternative to Certify Pursuant to Rule 54(b) or to Amend the May 10, 2006 Order Pursuant to 28 U.S.C. § 1292(b). (Doc. 51). The Elliott Company ("Elliott") seeks reconsideration of the Court's May 10, 2006 decision that it is not entitled to coverage under certain insurance policies. (Doc. 49). For the following reasons, the Court GRANTS Elliott's Motion for

Reconsideration and DENIES the Alternative Motions to Certify and Amend.[1]

## DISCUSSION

The Court's May 10 Opinion and Order resolved various issues regarding Elliott's right to coverage for asbestos-related claims under insurance policies issued by Liberty Mutual Insurance Company ("Liberty") covering 1957–1963 and 1980–1986. The Court concluded that Elliott was not entitled to coverage under the 1957–1963 "Carrier Policies" and the 1980–1985 "UTC Policies." Of the various issues decided by the Court, Elliott seeks reconsideration of the Court's conclusion that coverage under the 1957–1963 Carrier Policies did not transfer to Elliott by contract. In the alternative, Elliott asks the Court to direct entry of final judgment as to all of the Carrier Policies and the 1980–1985 UTC Policies. As a second alternative, Elliott asks the Court to amend its Order to state that it involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation under 28 U.S.C. § 1292(b).

■ The Court will first address the Motion for Reconsideration. The Federal Rules of Civil Procedure do not provide for motions for reconsideration. "Instead, such motions, if served within ten days of entry of judgment, are considered motions to alter or amend judgments pursuant to ... Rule 59(e)." *Stubblefield v. Truck Stops Corp. of America,* unreported, 117 F.3d 1421 (6th Cir. July 10, 1997) (citing *Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119, 122 (6th Cir. 1982)). "Generally, there are three major situations which justify a court reconsidering one of its orders: 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not available at trial; or 3) to correct a clear error of law or to prevent a manifest injustice." *Hancor, Inc. v. Inter American Builders Agencies,*

1998 WL 239283 (N.D.Ohio March 19, 1998) (citing *In re Continental Holdings, Inc.,* 170 B.R. 919, 937 (Bankr.N.D.Ohio 1994)).

■ Elliott contends that the Court erred in concluding that coverage under the Carrier Policies did not transfer to Elliott by contract. Elliott merged with the Carrier Corporation ("Carrier") in 1957 at which time it was dissolved and operated as a division of Carrier. The Elliott Division was covered by the Carrier Policies from 1957 through 1963. As the Court previously explained:

Carrier was purchased by third-party defendant United Technologies Corporation ("UTC") in 1979. The Elliott Division continued as an unincorporated division of Carrier until August 21, 1981, when it was incorporated as Elliott Turbomachinery, Inc. ("Elliott Turbo"). Carrier, UTC and Elliott Turbo entered into "an Agreement and Plan of Reorganization and Corporate Separation" dated December 21, 1981 (the "Separation Agreement"). Elliott Turbo was assigned the liabilities of the Elliott Division. The Separation Agreement included the following provision relevant to the transfer of rights under the Carrier Policies to Elliott Turbo:

Carrier will ... assign, transfer and deliver to [Elliott Turbo] all the properties, assets, good will of every kind and description, both real and personal, tangible and intangible of said [Elliott Division], as set forth in Exhibit A hereto.

Despite a diligent search, Elliott has not been able to locate Exhibit A to determine if it includes the Carrier Policies.

(Doc. 49).

Elliott presented secondary evidence that Exhibit A included the Carrier Policies, including a Board resolution authorizing Carrier to transfer all of the assets of the Elliott Division to Elliott Turbo and a number of letters from UTC acknowledging that Elliott Turbo received all of the Elliott Division's assets. Liberty responded, *inter alia,*[2] that

---

1. The Court also GRANTS Liberty's Motion to File a Surreply (Doc. 58) as unopposed. The surreply addresses issues raised for the first time in Elliott's reply.

2. Liberty also noted that the Separation Agreement had an integration clause. However, Elliott has not presented secondary evidence to

prove new terms to the Separation Agreement or to contradict the Separation Agreement. The secondary evidence was introduced pursuant to Fed.R.Evid. 1004 because Exhibit A has been lost. It is undisputed that Exhibit A existed and that it listed assets that were actually transferred to Elliott Turbo. Also, the Court previously rejected Liberty's argument that the no-assignment

a "later 1987 Stock Purchase specifically sets forth policies under which Elliott Turbo was an insured or a beneficiary." It is in its consideration of this later 1987 agreement that Elliott believes the Court erred.

Elliott Turbo operated as a wholly owned subsidiary of UTC until 1987, when it was purchased by a group of outside investors as part of the 1987 Stock and Asset Purchase Agreement. The transaction was a sale of the shareholder's (UTC's) stock interest in its subsidiary (Elliott Turbo). Elliott notes that changes in the ownership of a corporation's stock do not change the rights or obligations of that corporation. *Smith Land Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 91 (3d Cir.1988). Accordingly, UTC had no right or title to Elliott Turbo's assets. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474–75, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003).

█ The Court's Opinion referred to the 1987 transaction as a sale or assignment of assets. *See* Doc. 49 at pp. 4, 13. Elliott is therefore correct that it has identified "an error of apprehension" that justifies reconsideration of this aspect of the Court's May 10 Opinion.[3] However, the impact of the Court's characterization of the transaction as an asset sale is somewhat different than Elliott contends. The Stock and Asset Purchase Agreement included a schedule setting forth "all of the policies of insurance of or under which [Elliott] is the owner, insured, beneficiary, or covering any of the property of [Elliott.]" The schedule did not include the Carrier Policies. Elliott argues that the Court read this provision as negating any prior transfer of coverage to Elliott. To the contrary, the reason the Court considered the Stock and Asset Purchase Agreement was to settle the "dispute over the missing contents of Exhibit A to the Separation Agreement"—i.e., whether Elliott ever received coverage under the Carrier Policies in the first place. The Stock and Asset Pur-

chase Agreement was conclusive secondary evidence that Exhibit A did not include the Carrier Policies.

Nonetheless, the fact that the 1987 transaction was a stock sale does impact the weight it should be given as secondary evidence. Since it was unnecessary for UTC to explicitly transfer Elliott Turbo's assets in the stock sale there is a reasonable explanation for the omission of the Carrier Policies from the schedule of the Stock and Asset Purchase Agreement. *See Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford*, 167 F.Supp.2d 1004, 1009 (N.D.Ill.2001) (concluding that the "transfer of parent-level ownership" did not "affect any rights and duties under" insurance policies owned by the subsidiary). While the Stock and Asset Purchase Agreement may still be considered as secondary evidence, it can no longer carry the heavy load of meeting Liberty's burden on summary judgment.

The Court also rejects Liberty's other arguments for denying reconsideration. The Court previously held that the "it is unclear" whether coverage transferred as a result of the Separation Agreement. Liberty seizes upon this language in citing cases where a party's burden of proof was not met when the evidence was unclear. *E.g., Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1496 (5th Cir.1990). However, Elliott did not rely solely upon the Separation Agreement. Elliott also presented secondary evidence under Fed.R.Evid. 1004 and to explain an ambiguous term of an integrated agreement. *E.g., Books–A–Million, Inc. v. H & N Enters.*, 140 F.Supp.2d 846, 857 (S.D.Ohio 2001) (Ohio law). Although not sufficient to meet Elliott's own burden on summary judgment, this evidence does create a genuine issue of material fact. Fed.R.Civ.P. 56(c).

Accordingly, Elliott's Motion for Reconsideration is granted. Neither party is entitled

---

clause of the policies precluded the transfer of coverage.

3. The Court rejects Liberty's contention that Elliott has not presented appropriate grounds for a motion for reconsideration. Reconsideration is appropriate where a court "has made an error not of reasoning but of apprehension." *Braxton v. Scott*, 905 F.Supp. 455, 457 (N.D.Ohio 1995);

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990); *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 678 (3d Cir.1999). The Court's opinion treated the Stock and Asset Purchase Agreement as an asset sale with respect to Elliott Turbo. Liberty is incorrect that Elliott is simply rearguing its previous position.

to summary judgment with respect to the Carrier Policies.

■ The Court will next address the motion to certify under Fed.R.Civ.P. 54(b). That rule provides as follows:

When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed.R.Civ.P. 54(b).

The first requirement for Rule 54(b) certification is that the Court direct entry of a final judgment as to one or more but fewer than all of the claims in a multiple claim action. *Lowery v. Federal Express Corp.,* 426 F.3d 817, 821 (6th Cir.2005). Elliott points out that courts have held that each separate insurance policies constitute separate claims for purposes of Rule 54(b). *Walker v. Maccabees Mut. Life Ins. Co.,* 753 F.2d 599, 602 (7th Cir.1985); *Bertschinger v. Nat'l Sur. Corp.,* 449 F.2d 746, 747 (9th Cir.1971). Thus, the Court might enter judgment as to one or more but fewer than all of the policies.

The second requirement is that there be no just reason for delay. *Lowery,* 426 F.3d at 821. The Sixth Circuit "has identified the following nonexhaustive list of factors to be considered:"

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Id.* at 822 (citing *Gen. Acquisition, Inc. v. GenCorp, Inc.,* 23 F.3d 1022, 1030 (6th Cir. 1994)). The Sixth Circuit has also explained that in order to avoid piecemeal litigation courts should only allow appeals under Rule 54(b) in the "infrequent harsh cases." *Gen. Acquisition,* 23 F.3d at 1027; *Rudd Constr. Equip. Co. v. The Home Ins. Co.,* 711 F.2d 54, 56 (6th Cir.1983).

In light of the Court's decision to grant reconsideration and deny both parties' motions for summary judgment as to the Carrier Policies, Elliott's most compelling arguments are moot. Although the exhaustion issue is unique to the UTC Policies, other issues on appeal, such as the effectiveness of the no-assignment clauses, apply to all of the policies. Concerns about delay, efficiency and economic considerations are diminished significantly now that the Carrier policies are back in play. Accordingly, the Court concludes that this is not the "infrequent harsh case" that justifies certification under Rule 54(b).

Elliott also asks the Court to amend the May 10 Order to allow an interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

Elliott's request is denied. Elliott's Motion posits that there is substantial ground for difference of opinion as to two controlling questions of law regarding coverage under the Carrier Policies. The first question of law has been reconsidered by the Court. The second question of law is the Court's conclusion that coverage could not pass by operation of law. In light of the recommendation that Elliott be allowed to move forward on its claims under the Carrier Policies, an interlocutory appeal of the second issue would not materially advance the ultimate termination of the litigation.

### CONCLUSION

For the foregoing reasons, Elliott's Motion for Reconsideration is GRANTED. Neither party is entitled to summary judgment as to

coverage under the Carrier Policies. Elliott's Motion to Certify Under Rule 54(b) and Motion to Amend Pursuant to 28 U.S.C. § 1292(b) are DENIED.

IT IS SO ORDERED.