**ULTRA–PRECISION MANU-FACTURING LIMITED,**
Plaintiff–Appellant,

v.

**FORD MOTOR COMPANY,**
Defendant–Appellee.

No. 02–1622.

United States Court of Appeals, Federal Circuit.

DECIDED: July 28, 2003.

Andrew Kochanowski, Sommers, Schwartz, Silver & Schwartz, P.C., of Southfield, MI, argued for plaintiff-appellant. With him on the brief was James J. Vlasic. Of counsel on the brief was Michael H. Baniak, Baniak Pine & Gannon, of Chicago, IL.

Ernie L. Brooks, Brooks & Kushman P.C., of Southfield, MI, argued for defen-

dant-appellee. With him on the brief were Frank A. Angileri and Mark Lorelli.

Before NEWMAN, GAJARSA and PROST, Circuit Judges.

GAJARSA, Circuit Judge.

Ultra–Precision Manufacturing Limited ("UPM") appeals the district court's grant of two separate motions *in limine*, certified under Fed.R.Civ.P. 54(b), excluding damages evidence relating to UPM's unjust enrichment claims as preempted by the federal patent laws of the United States. *Ultra–Precision Mfg. Ltd. v. Ford Motor Co.*, No. 01–CV–70302 (E.D.Mich. Sept. 5, 2001). Because this court lacks jurisdiction to hear this interlocutory appeal, we dismiss UPM's appeal pending final resolution of all claims in this case.

## I. BACKGROUND

In 1988, Ford Motor Company ("Ford") approached UPM principals, Ross Herron and Garry Beard, to help design a solution to long-standing noise, vibration, and harshness ("NVH") problems associated with Ford's FX–15 air conditioning compressors. After two months of investigation, Herron and Beard designed an effective retrofit solution which included a series of pulse damper ("PD") tubes placed in the pistons of the existing compressor that redirected the flow of gas from the front to the rear of the compressor heads. The PD tubes were designed to make the gas flow within the pistons equidistant, thereby minimizing the peak-to-peak pressure pulsations created by the pistons in the compressor. Herron and Beard applied for and received two patents, United States Patents Nos. 4,934,482 ("the '482 patent") and 5,133,647 ("the '647 patent"), for the retrofit PD tubes. The claims of the patents were limited to the retrofit PD tubes used in the FX–15 compressor. UPM

shared these results and initiated meetings with Ford, hoping that Ford would compensate UPM for its solution to Ford's problem. UPM never entered into a written contract with Ford.

On October 18, 1990, while UPM was in ongoing discussions with Ford, Thomas Finn, an engineer in Ford's Climate Control Division, sent a letter to UPM stating: "I am well aware of the merits of the PD tube and I am currently investigating its performance with other design changes to eliminate our need for in-line mufflers." The letter also stated that UPM's technology "does not work well alone in our system due to other concerns such as slugging." Slugging results from liquid buildup inside the compressor. This was the last communication between Ford and UPM.

In early 1991, Finn began work on a new prototype compressor with integral PD tubes which ultimately became known as the FS–10 compressor. On December 23, 1991, Finn and two other Ford employees filed a patent application seeking protection for the integral head design of the FS–10 compressor. This application issued as United States Patent No. 5,236,312 ("the '312 patent"). Ford began use of the FS–10 in 1992.

Sometime in 2000, UPM learned that Ford was using a compressor without an in-line muffler. Upon further investigation, UPM determined that the compressor utilized an integral PD tube compressor. Shortly thereafter, UPM filed this action alleging unjust enrichment, breach of contract, and commercial misappropriation under Michigan state law and seeking, *inter alia,* substitution of inventorship in the '312 patent under 35 U.S.C. § 262. UPM initially alleged that Herron and

Beard were the sole inventors of the '312 patent.

Ford moved for summary judgment seeking dismissal of all claims. The district court granted summary judgment to Ford on the breach of contract and commercial misappropriation claims. The district court found that disputed issues of material fact existed with regard to UPM's claims of substitution of inventorship and unjust enrichment and therefore denied Ford's motion for summary judgment on those claims. In making its ruling, the district court, relying on this court's holding in *University of Colorado Foundation v. American Cyanamid,* 196 F.3d 1366 (Fed.Cir.1999), ruled that UPM's state law unjust enrichment claims were not preempted by federal patent law.[1] During the summary judgment proceedings, UPM conceded that it was only seeking *co-inventorship* of the '312 patent, as opposed to sole inventorship as initially pled. Shortly before trial, Ford filed two motions *in limine* requesting (1) exclusion of evidence of damages for any uses of technology disclosed in UPM's '482 and '647 patents but not claimed; and (2) exclusion of evidence of damages for any use of the '312 patent because, as co-inventors, Ford could not be liable for any damages pursuant to 35 U.S.C. § 262.

Despite its earlier summary judgment determination concerning preemption, the district court granted both motions *in limine.* The district court determined that: (1) any damages stemming from use of the '312 patent were preempted by 35 U.S.C. § 262, which specifically states that co-inventors of a patent are not required to account for revenues received from a patent; and (2) any damages stemming from technology disclosed but not claimed in a patent were also preempted by the federal

---

**1.** Although the court dismisses this appeal for lack of jurisdiction, it does not rule on any substantive issue of law which is presently the law of the case.

patent laws. The district court further invited UPM to amend its complaint to specifically allege unjust enrichment for conduct separate from inventorship. In an August 19, 2002 letter addressed to the court, UPM specifically declined to do so. UPM also moved for a Rule 54(b) certification with respect to its unjust enrichment claims arguing that the grant of the motions *in limine* effectively disposed of UPM's unjust enrichment claims.

In a subsequent telephone conference between the district court and the parties, there was significant discussion about whether the motions *in limine* actually disposed of the unjust enrichment claims. The district court again made clear that UPM was free to amend its complaint to allege unjust enrichment based on the circumstances arising prior to issuance of UPM's patents and issuance of the '312 patent UPM again refused to amend its complaint. Instead, UPM stated that it believed the district court improperly granted the motions *in limine* and that it was satisfied with its unjust enrichment claim as pled. After lengthy discussions, between the parties and the district court, UPM elected to proceed under its unjust enrichment theory as pled and forego any additional unjust enrichment claim should the Federal Circuit affirm the district court's ruling. As a result, the district court certified its ruling pursuant to Rule 54(b). UPM subsequently filed the present appeal.

## II. DISCUSSION

This case presents the issue of whether an *in limine* evidentiary ruling, excluding damages evidence and certified by the district court pursuant to Rule 54(b), constitutes an appealable resolution of a single claim in a multiple claim action for purposes of our jurisdiction.

The first question we must consider, although not raised by the parties, is whether we have jurisdiction to hear this appeal. "[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (internal quotation marks and citations omitted). "Jurisdiction is a threshold issue and a court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed.Cir.2002) (citations omitted). We apply our own law and not the law of the regional circuit to issues concerning our jurisdiction. *Spraytex, Inc. v. DJS&T, Homax Corp.*, 96 F.3d 1377, 1379 (Fed.Cir.1996). *But see, Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 793 (Fed.Cir.2000) (applying regional circuit law to issue of the finality of a Rule 12(b)(6) dismissal of a complaint for failure to state a claim upon which relief could be granted).

■ When an appeal is certified pursuant to Rule 54(b), we review the finality of the judgment *de novo* in order to ensure we have jurisdiction to hear this appeal. *W.L. Gore & Assocs. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 862 (Fed.Cir.1992).

> While the district court's determination that there was no just reason for delay is reviewed under an abuse of discretion standard, the Supreme Court has emphasized that the District Court *cannot,* in the exercise of its discretion, treat as final that which is not final within the meaning of § 1291.

*Id.* (internal quotation marks omitted).

■ In a case arising in whole or in part under the patent statute, this court has jurisdiction "of an appeal from a final decision of a district court of the United States." 28 U.S.C. § 1295(a)(1) (2000). A

district court's judgment is final where "it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). Generally, in a case involving more than one claim, there is no final decision until a judgment is entered adjudicating all of the claims. *Spraytex,* 96 F.3d at 1379. "The requirement of finality is a statutory mandate and not a matter of discretion." *W.L. Gore,* 975 F.2d at 862.

There are, however, exceptions to this rule of finality. For example, Rule 54(b) provides for appeal of a single adjudicated claim while other claims remain unadjudicated and pending. Additionally, 28 U.S.C. § 1292(b) and (c)(1) provide for interlocutory appeal of issues within a claim that itself has not been finally adjudicated, and therefore is not otherwise appealable.

## A. *Rule 54(b)*

Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Rule 54(b) applies "only when additional claims, counterclaims, or third-party claims are left unadjudicated." *W.L. Gore,* 975 F.2d at 862. Rule 54(b) "does not relax the finality required of each decision, as an individual claim." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). A judgment is not final for purposes of Rule 54(b) unless it is an "ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* Moreover, "[n]ot all

final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss–Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). "The function of the district court under the Rule is to act as a 'dispatcher.'" *Id.* (quoting *Sears,* 351 U.S. at 436, 76 S.Ct. 895).

## B. *28 U.S.C. § 1292(b)*

Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (2001).

Jurisdiction pursuant to § 1292(b) and (c)(1) thus requires a separate and distinct certification from that required under Rule 54(b), namely, a certification that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Thus, an otherwise unappealable, interlocutory order may be reviewed by

this court if a district court certifies the order pursuant to 28 U.S.C. § 1292(b) *and* this court grants a party's petition for permission to appeal the order. This court determines for itself whether it will grant permission to appeal an interlocutory order pursuant to that provision. *In re Convertible Rowing Exerciser Patent Litig.*, 903 F.2d 822 (Fed.Cir.1990). Such a ruling is within this court's complete discretion. *Id.* (stating that the court may deny application to appeal without specifying the grounds for basis of denial).

### C. Analysis

The present appeal was framed by the parties and the district court as an appeal of the grant of two separate motions *in limine* relating to the unjust enrichment claim in a multiple claim action. Subsequent to these rulings, the district court, at the request of UPM, entered judgment with respect to the unjust enrichment claim, then certified this judgment pursuant to Rule 54(b). For the reasons discussed below, this certification was improper and this court therefore lacks jurisdiction to hear the present appeal.

First, "[i]n order for Rule 54(b) to apply, the judgment must be *final* with respect to one or more *claims*." *W.L. Gore*, 975 F.2d at 861 (emphasis added). The grant or denial of a motion *in limine* is not "an *ultimate* disposition of an *individual* claim entered in the course of a multiple claims action," *id.* at 862 (quoting *Sears*, 351 U.S. at 436, 76 S.Ct. 895), and therefore is not final for purposes of our jurisdiction. A motion *in limine* is by nature a preliminary ruling, is not certifiable pursuant to Rule 54(b), and therefore is not appealable.

*Palmieri v. Defaria*, 88 F.3d 136, 139 (2d Cir.1996) (holding that *in limine* evidentiary rulings do not constitute final rulings on admissibility and therefore are not appealable); *Armijo v. Atchison, Topeka & Santa Fe Ry. Co.*, 19 F.3d 547, 552 (10th Cir.1994) (holding that a ruling on a motion *in limine* to exclude evidence of a defense was not a final judgment subject to appeal, though ruling was included in final judgment, where the ruling did not resolve the claim, but merely rejected evidence of one defense to the claim); *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1342 (9th Cir.1985) ("Rulings on *in limine* motions are not final appealable orders under 28 U.S.C. § 1291.").

■ Contrary to UPM's assertion, we conclude that there has been no *final* resolution of any one *claim*, as required by Rule 54(b). Here, the only issues disposed of by the district court's *in limine* rulings relate to the evidence of damages UPM would be allowed to submit at trial. This evidence relates not to liability for the unjust enrichment claim but rather to the quantum of relief UPM seeks. Indeed, the only determination on the merits of the claim was the district court's *denial* of Ford's motion for summary judgment. Thus, at this point, the district court has explicitly determined that a genuine issue of material fact exists with respect to the unjust enrichment claim. Because there was never any sort of determination on the merits of the unjust enrichment claim, there was no final disposition of the claim under Rule 54(b).[2]

Second, a ruling on a motion *in limine* is appealable only as an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section

---

**2.** The Sixth Circuit, addressing a similar issue in *General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022 (6th Cir.1994), determined that a partial grant of summary judgment relating to limits on damages without any determina-

tion of liability was not a final judgment for purposes of Rule 54(b). *Id.* at 1027. The court in General Acquistion also denied the parties' joint motion for interlocutory review pursuant to § 1292(b). *Id.* at 1025–26.

1292(b) more appropriately addresses the appeal of issues within a claim like those presently before this court. *See, e.g., Taylor v. PPG Indus., Inc.,* 256 F.3d 1315 (Fed.Cir.2001) (granting motion pursuant to § 1292(b) to appeal issue of preemption in conjunction with appeal of grant of summary judgment certified by the district court pursuant to Rule 54(b)).

Section 1292(b) and Rule 54(b) address two different situations. The former applies only to orders that would be considered interlocutory even if presented in a simple single-claim, two-party case. Rule 54(b) applies only to adjudications that would be final under Section 1291 if they occurred in an action having the same limited dimensions. Therefore, if an order is final under Section 1291, Section 1292(b) cannot apply and resort must be had to Rule 54(b) in the multiple-party or multiple-claim situation. Conversely, if an order is interlocutory, Rule 54(b) has no bearing on any determination that might be made under Section 1292(b).

10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2658.2 (3d ed.1998). *But see Local P–171, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Thompson Farms Co.,* 642 F.2d 1065, 1071 (7th Cir.1981) ("Though the mechanics of the two procedures [for § 1292(b) and Rule 54(b)] are different, their primary purposes are identical: to accelerate appellate review of select portions of a litigation.").

The substance of the issue on appeal addresses to what extent the federal patent laws preempt a state law cause of action for unjust enrichment. This appeal, however, arose in the context of pre-trial motions *in limine* relating to damages evidence. Rulings on motions *in limine* are by definition preliminary and are subject to change as the case unfolds. *Luce v. United States,* 469 U.S. 38, 41–42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (noting

definition of *"in limine"* as "on or at the threshold; at the very beginning; preliminarily"). Any decision by this court on appeal of such a preliminary ruling would be wholly speculative for we have no way of knowing whether the district court would reconsider the preliminary ruling or what particular evidence ultimately would be admitted at trial. *See Coursen,* 764 F.2d at 1341. Moreover, in this particular case, the judge's ruling excluding certain damages evidence is irrelevant if UPM is unable to prove the merits of its unjust enrichment claim in the first instance. There was simply never any final disposition of the unjust enrichment claim. Without a determination of liability, there can be no damages and therefore any appeal on the quantum of relief available at this stage is premature and would be advisory.

The reason for this distinction is a prudential one grounded in the long-standing policy against piecemeal litigation. *See Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Palmieri,* 88 F.3d at 139. After complete resolution of a claim in a multiple claim action, the district court is no doubt the "dispatcher" in the best position to determine whether a claim should be certified under Rule 54(b) for purposes of immediate appeal. *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. 1460; *Sears,* 351 U.S. at 436, 76 S.Ct. 895. But, in the circumstances where an order of the district court disposes of less than the entire claim, as is the case here, § 1292(b) provides the additional safeguard of requiring the court of appeals' consent to appeal the order. This additional safeguard further protects against piecemeal appeals of issues within claims.

For these reasons, this court holds that the grant of an *in limine* motion with respect to damages evidence is not a final disposition of a claim that can be certified

pursuant to Rule 54(b). Any attempt to appeal such a ruling must follow the procedures required by 28 U.S.C. § 1292(b).

### III. CONCLUSION

For the foregoing reasons, this court lacks jurisdiction to hear this interlocutory appeal at this stage in the proceedings. The appeal is therefore

*DISMISSED.*

### IV. COSTS

Each party to bear its own costs.