NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FUJITSU LIMITED,**

*Plaintiff-Petitioner,*

**v.**

**TELLABS, INC., TELLABS OPERATIONS, INC., AND TELLABS NORTH AMERICA, INC.,**

*Defendants-Respondents.*

---

Miscellaneous Docket No. 154

---

On Petition for Permission to Appeal pursuant to 28 U.S.C. § 1292(b) from the United States District Court for the Northern District of Illinois in No. 09-CV-4530, Chief Judge James F. Holderman, Jr.

---

## ON PETITION FOR PERMISSION TO APPEAL

---

Before DYK, PROST, and O'MALLEY, *Circuit Judges.*

Opinion of the court filed PER CURIAM.
Dissenting opinion filed by *Circuit Judge* O'MALLEY.

PER CURIAM.

**O R D E R**

Fujitsu Limited ("Fujitsu") petitions for permission to appeal the May 23, 2013 order of the United States District Court for the Northern District of Illinois granting Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc.'s (collectively "Tellabs") motion for summary judgment on the issue of whether Fujitsu may seek lost profits as a theory of damages, if infringement liability is found. Tellabs responds.

Fujitsu is a Japanese corporation and sole owner of United States Patent Nos. 5,521,737 ("the '737 patent") and 5,526,163 ("the '163 patent"). Sales of Fujitsu patented telecommunications systems in the United States are made by a non-exclusive licensee, Fujitsu Network Communications, Inc. ("FNC"). FNC is a wholly owned subsidiary of Fujitsu and a California corporation.

Fujitsu sued Tellabs for patent infringement.[1] When submitting its expert reports, Fujitsu indicated it would be seeking damages based on lost profits regarding two contracts Tellabs obtained. Tellabs moved for summary judgment on the issue of whether Fujitsu could recover lost profits on the two patents.

The district court stated that whether a parent company patent owner may be compensated under the damages theory of lost profits for its wholly-owned subsidiary's lost sales turned on whether the subsidiary's profits "flowed inexorably" to the patent-owner parent, citing *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1366 (Fed. Cir. 2008). The court then concluded that based on the facts of this case, Fujitsu would not be

---

[1] The '737 patent and the '163 patent are the only patents covered by the district court's May 23, 2013 order, although there are other patents in the litigation. FNC is not a party to the action giving rise to the May 23, 2013 order.

allowed to seek lost profits as a theory of recoverable damages at trial.

The court certified the following issues for interlocutory appeal under 28 U.S.C. § 1292(b):

> 1)    Can a foreign patent owner that does not sell any products in the U.S. market collect lost profits damages based on sales lost by its wholly-owned U.S. subsidiary, which is a non-exclusive licensee under the patent?
>
> 2)    Can a foreign patent owner that manufactures and sells component parts to its wholly-owned U.S. subsidiary via a transfer pricing mechanism designed to comply with the Internal Revenue Code, 26 U.S.C. § 482, recover as lost profits the lost payments from its wholly-owned U.S. subsidiary for these component parts?

*Fujitsu Ltd. v. Tellabs, Inc.*, No. 09-C-4530, slip op. at *16 (N.D. Ill. May 23, 2013).

Under 28 U.S.C. § 1292(b), a district judge may certify for appeal an otherwise unappealable order when it is "of the opinion that such order involves a *controlling question of law* as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may *materially advance the ultimate termination of the litigation.*" 28 U.S.C. § 1292(b) (emphasis added). Both the legislative history of Section 1292(b) and the case law emphasize that appellate courts should only grant interlocutory appeals under rare circumstances.[2]

---

[2]    *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 450 F. App'x 978, 979 (Fed. Cir. 2011); *Union Cnty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) ("'[I]nterlocutory appeals should . . . be granted

4                                    FUJITSU LIMITED v. TELLABS, INC.

In general, a question of law is "controlling" within the meaning of Section 1292(b) only if our resolution of that issue could have an immediate impact on the course of the litigation. In past cases we have held that a question regarding the theory on which damages may be recovered cannot be controlling where the issue of liability remains undecided. *See Quad Dimension, Inc. v. Sage Alerting Sys., Inc.*, 69 F. App'x 448, 449 (Fed. Cir. 2003) (denying a Section 1292(b) petition for permission to appeal a damages issue because the district court had not yet tried the issues of patent infringement and invalidity); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, Misc. No. 405, 1997 WL 173208 (Fed. Cir. Mar. 20, 1997) (denying a Section 1292(b) petition for permission to appeal summary judgment on a damages issue); *see also United States v. Rent-A-Homes Sys. of Ill., Inc.*, 602 F.2d 795, 797 (7th Cir. 1979) (quoting an earlier decision of the court, holding that where no violation of the Fair Housing Act of 1968 had been established at the district court level, "any question of the propriety of compensatory damages [was] premature for [the appellate] court's consideration"). As we noted in *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353 (Fed. Cir. 2003), in the

---

sparingly and with discrimination.'" (citations omitted)); *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) ("Section 1292(b)'s legislative history reveals that . . . it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."); *United States Rubber Co. v. Wright,* 359 F.2d 784, 785 (9th Cir. 1966) ("The legislative history of subsection (b) of section 1292 . . . indicates that it was to be used only in extraordinary cases[.]"); *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958) ("It is quite apparent from the legislative history of the Act of September 2, 1958 that Congress intended that section 1292(b) should be sparingly applied.").

context of a Rule 54(b) appeal, "[w]ithout a determination of liability, there can be no damages and therefore any appeal on the quantum of relief available at this stage is premature and would be advisory." *Id.* at 1359.

The only instance where we granted a Section 1292(b) petition pertaining to a question on damages was *Studiengesellschaft Kohle, v. Shell Oil Co.*, No. 96-1079, 1995 WL 723644 (Fed. Cir. Nov. 29 1995). However, in *Studiengesellschaft,* the district court had already determined liability when the damages issue reached our court.

In *Fujitsu*, the issue of liability for patent infringement remains undecided. Therefore, granting this appeal on the lost profits issue would not resolve any controlling question of law.

Accordingly,

IT IS ORDERED THAT:

The petition for permission to appeal is denied.

FOR THE COURT

/s/  Daniel E. O'Toole
Daniel E. O'Toole
Clerk

s25

6                            FUJITSU LIMITED v. TELLABS, INC.

NOTE:  This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**FUJITSU LIMITED,**
*Plaintiff-Petitioner,*

**v.**

**TELLABS, INC., TELLABS OPERATIONS, INC.,**
AND **TELLABS NORTH AMERICA, INC.,**
*Defendants-Respondents.*

———————————

Miscellaneous Docket No. 154

———————————

On Petition for Permission to Appeal pursuant to 28 U.S.C. § 1292(b) from the United States District Court for the Northern District of Illinois in No. 09-CV-4530, Chief Judge James F. Holderman, Jr.

———————————

**ON PETITION FOR PERMISSION TO APPEAL**

———————————

O'MALLEY, *Circuit Judge*, dissenting.

I believe we should accept the interlocutory appeal the district judge has certified to us in this case.  While granting this petition may not *immediately* end the litigation as the majority evidently requires, it would materially advance its ultimate termination, which is all 28 U.S.C. § 1292(b) requires—indeed, that is precisely the purpose for which § 1292(b) was designed.  It is "within this court's complete discretion" to accept or deny an interlocu-

tory appeal under § 1292(b) and (c). *Studiengesellschaft Kohle v. Shell Oil Co.*, No. 96-1079, 1995 WL 723644, at *1 (Fed. Cir. Nov. 29, 1995). Under the circumstances presented here, we should exercise our discretion to accept the appeal.

Section 1292(b) allows an appeal of a preliminary order when a district court judge believes that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of that litigation." 28 U.S.C. § 1292(b). The legislative history of § 1292(b) emphasizes that the purpose of interlocutory appeals was to create a vehicle to avoid unnecessary expenditures of party and court resources. *See* S. Rep. No. 2434, Report of the Committee on Appeals from Interlocutory Orders of the District Courts, Sept. 23, 1953, *reprinted in* 1958 U.S.C.C.A.N. 5255, 5260–61 (stating that, while groundless appeals and piecemeal litigation are disfavored, interlocutory appeals may be used to avoid unnecessary delay and expense). Applying these principles to the petition here should compel us to grant it—not deny it as the majority does.

The record in this case reveals that both parties and the district court believe that resolution of the certified questions will materially advance the ultimate termination of this litigation. *See Fujitsu Ltd. v. Tellabs, Inc.*, 1:09-cv-4530, ECF No. 1096 at 3:12–8:25 (N.D. Ill. May 15, 2013) (transcript from hearing wherein all parties and district court agree that Federal Circuit resolution of the lost profits questions would materially advance the litigation). The parties diligently have attempted to settle this dispute, but, absent resolution of their disagreement over whether Fujitsu is entitled to lost profits through its wholly owned subsidiary, the parties cannot "value" the case. *See id.* In other words, Fujitsu cannot determine whether the cost of the remaining pretrial proceedings

and trial will outweigh any potential recovery, and Tellabs is unable to determine its potential risk of exposure. Our resolution of these pending questions will allow the parties to obtain a clear-eyed view of their potential risks. The dispute here is not one at the margins; resolution of the certified questions would mean the difference between a substantial damages award and none, or relatively none.

The district court, moreover, has currently set December 2, 2013, as the deadline for dispositive motions, and trial is set for February 2014. *See Fujitsu*, ECF No. 1108 (N.D. Ill. June 7, 2013). Between now and trial, the parties must engage in expensive and time-consuming fact and expert discovery, and the district court will be required to rule on dispositive motions, resolve any discovery disputes that may arise, and hold pretrial hearings. Subsequently, the district court must empanel a jury, and the parties will have to present a trial and engage in post-trial motion practice. Only then will the parties be entitled to file an appeal to this court. Should this court accept the petition, however, the district court has already indicated that it will likely exercise its discretion to stay the pending litigation, *see Fujitsu*, ECF No. 1103 at 16 (N.D. Ill. May 23, 2013) (district court discussing propriety of stay should the Federal Circuit grant this petition), saving both the parties and the district court considerable resources in the process.

Accepting this petition on the narrow questions certified under these unique circumstances will not overburden this court, and is fully in line with the goal of materially advancing the ultimate termination of this litigation. The parties have raised a compelling issue that may impact numerous cases wherein a foreign patent owner sells a commercial embodiment of that invention through a U.S. subsidiary. Even putting aside any far-reaching implications, the parties—and, most importantly, the district court—have made clear that they believe

resolution of this issue will materially advance termination of the litigation. Indeed, the requirement that a district judge first certify the order under § 1292(b) was "deliberately adopted to secure an initial judgment on the desirability of appeal by the trial judge as the person *most familiar* with the litigation." 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3929 (3d ed. 2012) (emphasis added). The district court's certification "serves the dual purpose of ensuring that such review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court of appeals." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978).

Here, the district court has been shepherding this case to its current state since *July 29, 2009*—over four years. The district court's determination that resolution of the lost profits issue would quicken the termination of this litigation—coming from a careful and experienced jurist who has *never before* certified a case for appeal to this court—should be entitled to deference. In fact, this court only has received nineteen (19) petitions for permission to appeal under § 1292(b) in the last five years from district courts, and only five (5) of those petitions have been granted. Given the scarcity of requests, and our extremely low grant rate, accepting this petition will not burden us nor encourage unthinking certification on different facts from other district judges.

The cases on which the majority relies to justify denial of the petition do not require that result; they do not even counsel against it. As noted, the decision to grant or deny the petition is purely discretionary; there is no hard and fast rule requiring a refusal to exercise that discretion in any circumstance. *See Studiengesellschaft Kohle*, No. 96-1079, 1995 WL 723644, at *1. The only case the majority cites that provides *any* analysis regarding whether § 1292(b) is a proper vehicle regarding an interlocutory appeal of a damages issue is *Ultra-Precision*

*Manufacturing, Inc. v. Ford Motor Co.*, 338 F.3d 1353 (Fed. Cir. 2003). That case involved a grant of a motion *in limine* to prohibit certain damages evidence related to an unjust enrichment claim and a district court's attempt to certify that issue to this court under Federal Rule of Civil Procedure 54(b). 338 F.3d at 1356. Because the case centered on a dispute over ownership—a claim which remained pending—we had no jurisdiction under 28 U.S.C. § 1295 because there was no final judgment. We then concluded that, because the ruling on the motion *in limine* was provisional and there was no final disposition of the unjust enrichment claim, we lacked jurisdiction to hear the appeal under Rule 54(b). *Id.* at 1358. We noted, however, that "a ruling on a motion *in limine* is appealable only as an interlocutory appeal . . . Section 1292(b) more appropriately addresses the appeal of issues within a claim like those presently before the court." *Id.* (citing *Taylor v. PPG Indus., Inc.*, 256 F.3d 1315 (Fed. Cir. 2001)). In other words, we stated that a motion *in limine* on a damages issue *is* appropriately appealable under § 1292(b).

Unlike in *Ultra-Precision*, here the district court and the parties followed the procedures for certification required by § 1292(b). And, also unlike in *Ultra-Precision*, here: (1) the district court granted summary judgment on the lost profits issue, making it a final ruling, rather than a provisional ruling on a motion *in limine*; and (2) resolution of the damages issues will have a significant impact on how the case is litigated, if at all; there is no alternative claim that would still be pursued, as there was in *Ultra-Precision*.

The other cases the majority cites from this court, *Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*, 111 F.3d 142 (Fed. Cir. 1997), and *Quad Dimension, Inc. v. Sage Alerting System, Inc.*, 69 F. App'x 448, 449 (Fed. Cir. 2003), provide no discussion of whether the contemplated appeal in those cases would material-

ly advance the ultimate termination of the litigation. In *Johnson Electric*, we dismissed the appeal because the question of "whether a patentee may recover damages before the statutory bar if the patentee argue[ed] that an alleged infringer deliberately copied the patentee's product [was] not an issue of general importance or applicability worthy of permissive review at th[at] time." 111 F.3d at 142. We also stated that we were not convinced that there was a substantial ground for difference of opinion on the certified issue. *Id.* What we never mentioned, however, was whether the issue would materially advance termination of the litigation. Presumably it would not have.

Likewise, in *Quad Dimension*, we noted that issues of liability "remain to be tried *regardless* of whether the issues raised by this petition are decided by us at this time." 69 F. App'x at 449 (emphasis added). We provided no analysis whatsoever regarding whether the issue presented may materially advance the litigation. Here, we have all parties on record, and the district court, unequivocally stating that the resolution of the litigation may hinge on the questions currently certified to us. *Quad Dimension* is not applicable to these facts.[3]

---

[3] The majority also cites *United States v. Rent-A-Homes Systems of Illinois, Inc.*, 602 F.2d 795 (7th Cir. 1979). That case is not remotely like this one. In *Rent-A-Homes*, the United States brought an action to *enjoin* racially discriminatory housing practices prohibited by Title VIII of the Civil Rights Act of 1968. 602 F.2d at 796. The United States later sought monetary damages as a result of the defendants' discriminatory conduct. *Id.* The district court struck that portion of the United States' amended complaint, and then certified the question of whether the Civil Rights Act of 1968 allowed for the recovery of monetary damages. *Id.* at 796-97. The ap-

Our refusal to certify the questions presented means that the district court and the parties must trudge forward with a time-consuming and expensive trial on liability, when it is evident that determining the permissible scope of damages would substantially alter the parties' negotiating posture and may well end the litigation. Of course, the district court is free to bifurcate the liability portion from damages and try to certify this damages appeal once liability is determined. That is what the majority's rationale seems to urge, even in instances when the parties unequivocally represent that resolution of an important damages question may immediately terminate the litigation. Because, according to the majority, so long as liability is undecided, a question regarding damages can never resolve any "controlling" question of law. The parties and district court, meanwhile, will be required to expend tremendous resources en route to a liability determination that might have been avoided altogether.

---

peals court denied the petition on grounds that whether monetary damages were available under the Act was not a question which would materially advance termination of the litigation. *Id.* That is, an action brought under the Civil Rights Act of 1968 for discriminatory housing practices would proceed regardless of the monetary damages question because the United States was primarily interested in *remedying the continuing harm*, i.e., enjoining the racially discriminatory activity. In fact, only after the United States no longer sought equitable relief, because the defendants either went out of business or stopped their discriminatory acts, did the district court dismiss the case. *Id.* at 797. The parties here, and the district court, have represented that this is a lost profits case involving two specific contracts already awarded. The relief sought in this case is retrospective, not prospective.

Our decision today unnecessarily multiplies the potential costs of patent litigation, despite an opportunity to help hold them down. Section 1292(b) was added as an exception to the final judgment rule as a means to avoid unnecessary trial court proceedings and, in turn, to increase overall efficiency in the judicial process and save valuable resources. Under the circumstances presented in this case, accepting the appeal would further those goals. I respectfully dissent from the decision to do otherwise.