O’MALLEY, Circuit Judge,
dissenting.
I believe we should accept the interlocutory appeal the district judge has certified to us in this case. While granting this petition may not immediately end the litigation as the majority evidently requires, it would materially advance its ultimate termination, which is all 28 U.S.C. § 1292(b) requires — indeed, that is precisely the purpose for which § 1292(b) was designed. It is “within this court’s complete discretion” to accept or deny an interlocutory appeal under § 1292(b) and (c). Studiengesellschaft Kohle v. Shell Oil Co., 77 F.3d 502, - (Fed.Cir.1995). Under the circumstances presented here, we should exercise our discretion to accept the appeal.
Section 1292(b) allows an appeal of a preliminary order when a district court judge believes that the order “involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of that litigation.” 28 U.S.C. § 1292(b). The legislative history *1008 of § 1292(b) emphasizes that the purpose of interlocutory appeals was to create a vehicle to avoid unnecessary expenditures of party and court resources. See S.Rep. No. 2484, Report of the Committee on Appeals from Interlocutory Orders of the District Courts, Sept. 23, 1953, reprinted in 1958 U.S.C.C.A.N. 5255, 5260-61 (stating that, while groundless appeals and piecemeal litigation are disfavored, interlocutory appeals may be used to avoid unnecessary delay and expense). Applying these principles to the petition here should compel us to grant it — not deny it as the majority does.
The record in this case reveals that both parties and the district court believe that resolution of the certified questions will materially advance the ultimate termination of this litigation. See Fujitsu Ltd. v. Tellabs, Inc., 1:09-cv-4530, ECF No. 1096 at 3:12-8:25 (N.D.Ill. May 15, 2013) (transcript from hearing wherein all parties and district court agree that Federal Circuit resolution of the lost profits questions would materially advance the litigation). The parties diligently have attempted to settle this dispute, but, absent resolution of their disagreement over whether Fujitsu is entitled to lost profits through its wholly owned subsidiary, the parties cannot “value” the case. See id. In other words, Fujitsu cannot determine whether the cost of the remaining pretrial proceedings and trial will outweigh any potential recovery, and Tellabs is unable to determine its potential risk of exposure. Our resolution of these pending questions will allow the parties to obtain a clear-eyed view of their potential risks. The dispute here is not one at the margins; resolution of the certified questions would mean the difference between a substantial damages award and none, or relatively none.
The district court, moreover, has currently set December 2, 2013, as the deadline for dispositive motions, and trial is set for February 2014. See Fujitsu, ECF No. 1108 (N.D. Ill. June 7, 2013). Between now and trial, the parties must engage in expensive and time-consuming fact and expert discovery, and the district court will be required to rule on dispositive motions, resolve any discovery disputes that may arise, and hold pretrial hearings. Subsequently, the district court must empanel a jury, and the parties will have to present a trial and engage in post-trial motion practice. Only then will the parties be entitled to file an appeal to this court. Should this court accept the petition, however, the district court has already indicated that it will likely exercise its discretion to stay the pending litigation, see Fujitsu, ECF No. 1103 at 16 (N.D.Ill. May 23, 2013) (district court discussing propriety of stay should the Federal Circuit grant this petition), saving both the parties and the district court considerable resources in the process.
Accepting this petition on the narrow questions certified under these unique circumstances will not overburden this court, and is fully in line with the goal of materially advancing the ultimate termination of this litigation. The parties have raised a compelling issue that may impact numerous cases wherein a foreign patent owner sells a commercial embodiment of that invention through a U.S. subsidiary. Even putting aside any far-reaching implications, the parties — and, most importantly, the district court — have made clear that they believe resolution of this issue will materially advance termination of the litigation. Indeed, the requirement that a district judge first certify the order under § 1292(b) was “deliberately adopted to secure an initial judgment on the desirability of appeal by the trial judge as the person most familiar with the litigation.” 16 *1009 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3929 (3d ed.2012) (emphasis added). The district court’s certification “serves the dual purpose of ensuring that such review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court of appeals.” Coopers & Lybrand v. Livesay, 437 U.S. 463, 474, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).
Here, the district court has been shepherding this case to its current state since July 29, 2009 — over four years. The district court’s determination that resolution of the lost profits issue would quicken the termination of this litigation — coming from a careful and experienced jurist who has never before certified a case for appeal to this court — should be entitled to deference. In fact, this court only has received nineteen (19) petitions for permission to appeal under § 1292(b) in the last five years from district courts, and only five (5) of those petitions have been granted. Given the scarcity of requests, and our extremely low grant rate, accepting this petition will not burden us nor encourage unthinking certification on different facts from other district judges.
The cases on which the majority relies to justify denial of the petition do not require that result; they do not even counsel against it. As noted, the decision to grant or deny the petition is purely discretionary; there is no hard and fast rule requiring a refusal to exercise that discretion in any circumstance. See Studiengesellschaft Kohle, 77 F.3d at-. The only case the majority cites that provides any analysis regarding whether § 1292(b) is a proper vehicle regarding an interlocutory appeal of a damages issue is Ultra-Precision Manufacturing Limited v. Ford Motor Co., 338 F.3d 1353 (Fed.Cir.2003). That case involved a grant of a motion in limine to prohibit certain damages evidence related to an unjust enrichment claim and a district court’s attempt to certify that issue to this court under Federal Rule of Civil Procedure 54(b). 338 F.3d at 1356. Because the case centered on a dispute over ownership — a claim which remained pending — we had no jurisdiction under 28 U.S.C. § 1295 because there was no final judgment. We then concluded that, because the ruling on the motion in limine was provisional and there was no final disposition of the unjust enrichment claim, we lacked jurisdiction to hear the appeal under Rule 54(b). Id. at 1358. We noted, however, that “a ruling on a motion in limine is appealable only as an interlocutory appeal ... Section 1292(b) more appropriately addresses the appeal of issues within a claim like those presently before the court.” Id. (citing Taylor v. PPG Indus., Inc., 256 F.3d 1315 (Fed.Cir.2001)). In other words, we stated that a motion in limine on a, damages issue is appropriately appealable under § 1292(b).
Unlike in Ultra-Precision, here the district court and the parties followed the procedures for certification required by § 1292(b). And, also unlike in Ultra-Precision, here: (1) the district court granted summary judgment on the lost profits issue, making it a final ruling, rather than a provisional ruling on a motion in limine; and (2) resolution of the damages issues will have a significant impact on how the case is litigated, if at all; there is no alternative claim that would still be pursued, as there was in Ultra-Precision.
The other cases the majority cites from this court, Johnson Electric North America Inc. v. Mabuchi Motor America Corp., 111 F.3d 142 (Fed.Cir.1997), and Quad Dimension, Inc. v. Sage Alerting System, Inc., 69 Fed.Appx. 448, 449 (Fed.Cir.2003), provide no discussion of whether the contemplated appeal in those cases would materially advance the ultimate termination *1010 of the litigation. In Johnson Electric, we dismissed the appeal because the question of “whether a patentee may recover damages before the statutory bar if the paten-tee arguefed] that an alleged infringer deliberately copied the patentee’s product [was] not an issue of general importance or applicability worthy of permissive review at th[at] time.” 111 F.3d at 142. We also stated that we were not convinced that there was a substantial ground for difference of opinion on the certified issue. Id. What we never mentioned, however, was whether the issue would materially advance termination of the litigation. Presumably it would not have.
Likewise, in Quad Dimension, we noted that issues of liability “remain to be tried regardless of whether the issues raised by this petition are decided by us at this time.” 69 Fed.Appx. at 449 (emphasis added). We provided no analysis whatsoever regarding whether the issue presented may materially advance the litigation. Here, we have all parties on record, and the district court, unequivocally stating that the resolution of the litigation may hinge on the questions currently certified to us. Quad Dimension is not applicable to these facts.[3]
Our refusal to certify the questions presented means that the district court and the parties must trudge forward with a time-consuming and expensive trial on liability, when it is evident that determining the permissible scope of damages would substantially alter the parties’ negotiating posture and may well end the litigation. Of course, the district court is free to bifurcate the liability portion from damages and try to certify this damages appeal once liability is determined. That is what the majority’s rationale seems to urge, even in instances when the parties unequivocally represent that resolution of an important damages question may immediately terminate the litigation. Because, according to the majority, so long as liability is undecided, a question regarding damages can never resolve any “controlling” question of law. The parties and district court, meanwhile, will be required to expend tremendous resources en route to a liability determination that might have been avoided altogether.
Our decision today unnecessarily multiplies the potential costs of patent litigation, despite an opportunity to help hold them down. Section 1292(b) was added as an exception to the final judgment rule as a means to avoid unnecessary trial court *1011 proceedings and, in turn, to increase overall efficiency in the judicial process and save valuable resources. Under the circumstances presented in this case, accepting the appeal would further those goals. I respectfully dissent from the decision to do otherwise.

. The majority also cites United States v. Rent-A-Homes Systems of Illinois, Inc., 602 F.2d 795 (7th Cir.1979). That case is not remotely like this one. In Rent-A-Homes, the United States brought an action to enjoin racially discriminatory housing practices prohibited by Title VIII of the Civil Rights Act of 1968. 602 F.2d at 796. The United States later sought monetary damages as a result of the defendants’ discriminatory conduct. Id. The district court struck that portion of the United States’ amended complaint, and then certified the question of whether the Civil Rights Act of 1968 allowed for the recovery of monetary damages. Id. at 796-97. The appeals court denied the petition on grounds that whether monetary damages were available under the Act was not a question which would materially advance termination of the litigation. Id. That is, an action brought under the Civil Rights Act of 1968 for discriminatory housing practices would proceed regardless of the monetary damages question because the United States was primarily interested in remedying the continuing harm, i.e., enjoining the racially discriminatory activity. In fact, only after the United States no longer sought equitable relief, because the defendants either went out of business or stopped their discriminatory acts, did the district court dismiss the case. Id. at 797. The parties here, and the district court, have represented that this is a lost profits case involving two specific contracts already awarded. The relief sought in this case is retrospective, not prospective.